**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAMBURG SÜDAMERIKANISCHE DAMPFSCHIFFFAHRTS-GESELLSCHAFT KG | : | CASE NO. |
| | : | |
| Plaintiff | : | SECTION: |
| v. | : | |
| | : | 10  5514 |
| UTI UNITED STATES, INC. | : | |
| | : | |
| Defendant | : | |

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Hamburg Südamerikanische Dampfschifffahrts-Gesellschaft KG ("Hamburg Sud"), and for its Complaint for Damages and Declaratory Judgment against Defendant UTi United States, Inc. (UTi) aver as follows:

### PARTIES

1.  Hamburg Sud is a foreign corporation with its principal place of business in Germany.

2.  On information and belief, UTi is, and at all material times herein, a New York corporation duly organized and existing according to law, with operations at a number of UTi facilities throughout the United States, including operations in Philadelphia, Pennsylvania.

1

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court because the dispute arises from a maritime contract, and because the parties are citizens of different states or countries. Accordingly, this Court has subject matter jurisdiction pursuant to its admiralty jurisdiction under 28 U.S.C. § 1333 and diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Moreover, the contract underlying this dispute provides that its terms be construed pursuant to the general maritime laws of the United States. Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District, and because UTi has engaged in substantial commerce within this District.

## BACKGROUND

5. Hamburg Sud is a provider of sea freight transportation services.

6. On information and belief, UTi Worldwide is an international, non-asset-based supply chain services and solutions company that provides services through a network of offices and contract logistics centers. Its services include, among other things, ocean freight forwarding and customs brokerage.

7. On information and belief, UTi USA is a subsidiary of UTi Worldwide which arranges for and oversees UTi Worldwide operations in the United States.

8. Hamburg Sud executed a Charter Party through Rudolf A. Oetker KG with the vessel owner, Kommandigesellschaft MS "Santa Bettina" Offen Reederei GmbH & Co.. The charterer and the vessel owner executed a charter party on July 18, 2007 ("Charter Party") for a period of two years, 30 days more or less in the Charterer's option.

9. Under the terms of the Charter Party, the "bill of lading will have effect subject to the provision of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, [("COGSA")] which shall be said to be incorporated herein."

10. Hamburg Sud executed a shipping agreement via a bill of lading with UTi USA for the transport of eight wind generator gearboxes, each weighing at least 33,000 pounds (the "Cargo"). Hamburg Sud and UTi agreed that the Cargo would be shipped under FCL/FCL terms, in accordance with "shipper's load, stow, count, weight, and seal." An FCL/FCL shipping agreement (short for Full Container Load/Full Container Load) provides that the shipper will provide a loaded container to the dock for loading on the vessel.

11. The Bill of Lading constitutes a maritime contract, and under the Terms and Conditions of the Bill of Lading, where the Bill of Lading covers a shipment to, through or from a U.S. port or place COGSA shall govern, not only tackle-to-tackle, but during the Carrier's entire period of responsibility hereunder.

12. Additionally, under the Terms and Conditions of the Bill of Lading, where the "Container is stuffed by or on behalf of Merchant, such Container shall be deemed shipped as "Shipper's weight, load, stow, count and seal,'" and parties agreed that Plaintiff "has no reasonable means of checking quantity, weight, condition, identity or existence of contents or manner in which Goods are stuffed, stowed and secured within Container or breakbulk cargo is packaged, or that same is accurate or proper."

13. Moreover, under the Terms and Conditions of the Bill of Lading:

When a Container is supplied by the Carrier and has been stuffed by or on behalf of Merchant:
    (1) Carrier shall not be liable for loss of or damage to the Goods:
        (a) caused by manner in which Container has been stuffed;
        (b) caused by unsuitability of Goods for carriage in Containers;

> (c) caused by unsuitability or defective condition of Container, which would have been apparent upon reasonable inspection by Merchant at or prior to time Container was stuffed;
> (d) if Container is not sealed at commencement of Carriage by Merchant.
>
> (2) Merchant *shall defend, indemnify and hold Carrier harmless against any loss, damage, claim, liability or expense whatsoever covered by (1) above.*
>
> (3) In absence of a written request to contrary, Carrier is not under an obligation to provide a Container of any particular type or quality.

f) Merchant agrees to be responsible for all expenses of any nature incurred while the Goods and Containers are in the custody of Carrier or any Participating carrier, their agents or servants, including but not limited to repairs, reconditioning, demurrage as per Carrier's tariff(s), detention, fines and taxes, civil or criminal, cargo-related inspections by governmental authorities and their attendant costs, and whether charged to the Goods or Containers or levied upon Carrier, Vessel, Participating carrier, their conveyances, their agents or servants, which in any way relate to the Goods or which result from the acts or omissions to act on part of Merchant, its agents or servants, or third-parties for whom Merchant, its agents or servants, are responsible, and to submit to jurisdiction of any court, tribunal or other body before whom Carrier may be brought.
g) Carrier's prior written consent is required for dangerous or hazardous Goods, which must be distinctly marked as such on outside of Goods and Container.
h) Merchant warrants that it has complied with all statutes, ordinances, regulations and requirements of whatsoever nature relative to the Goods, Containers or other packages, their documentation or in any way relating thereto.
i) No obligation is assumed by Carrier unless the nature of breakbulk cargo requiring special care/handling is disclosed in writing and Carrier's agreement obtained at time of booking.

. . .

If *Merchant fails to comply with the above mentioned obligations, Merchant is responsible for all costs resulting therefrom and for all resulting liabilities and responsibilities whatsoever.*

14.     Hamburg Sud also contracted with a number of other shippers to transport items in addition to the Cargo.

15.     On or before April 21, 2009, Defendant and/or Defendant's agents or assigns delivered the Cargo to the Vessel, loaded and lashed onto eight 20-foot flat rack containers, numbered GESU 7561667; SUDU 2730964; SUDU 2731739; SUDU 2730603; SUDU 2730922;

SUDU 2731092; BHCU2 2602818; and SUDU 2730917, for stowage on board the vessel. The Cargo was loaded on the Vessel as delivered.

16. On each flatrack containing the Cargo, the gearbox was covered with opaque plastic sheeting through which access to the lifting lug was provided via a small hole.

17. On or about April 21, 2009, the Vessel sailed from Philadelphia, Pennsylvania en route to Bremerton, Germany, where the Cargo was to be delivered.

18. On or about April 22, 2009, during the voyage, a number of the gearboxes broke free from their flat-rack containers and caused substantial damage to the other containers on the Vessel:

- The gearbox loaded in container SUDU 2730917 broke free from its container and rolled inboard across two bays to another container, causing damage to SUDU 2730917, the other container and its contents, and the pontoon hatch cover of the Vessel.

- The gearbox loaded in container SUDU2730964 broke free from its container and caused damage to the Vessel and other containers, and the contents thereof.

- The gearbox loaded in container GESU 7561667 broke free from its container and rolled overboard, and in doing so, caused damage to various parts of the Vessel, including the handles of the covers of two hold vents, the racks for lashing rods, lashing rods, and a section of the ship's rail.

- The gearbox contained in SUDU 2730922 broke free from its container, and caused severe damage to several containers and their contents as well as widespread damage to the Vessel tank top.

- The gearbox loaded in container SUDU 2731739 broke free from its container, and caused severe damage to other containers and their contents and the tank top of the Vessel.

19. The weather experienced by the Vessel during passage from Philadelphia was not unexpected for transatlantic passage during the time of year for which the voyage was scheduled.

20. The Cargo was improperly loaded in its containers, with several of the gearboxes of the Cargo being lashed to their containers with insufficient wire, improperly oriented U-bolts, and other failures to follow industry standards for the storage and securing of cargo, such as those standards contained in the International Maritime Organization's Code of Safety Practice for Cargo Storage and Securing.

21. On April 30, 2009, an examination of the gearboxes and their containers by an independent marine surveyor after the Vessel arrived in Tillbury determined that the original lashings attaching the gearboxes to their containers were "entirely inadequate in layout and deficient in design to restrain the gearboxes against expected lateral forces during sea-carriage" and "the failure of the lashings was . . . the primary root cause of the damage to the gearboxes themselves, the damage to the other cargoes and the damage to the Vessel."

22. The movement of the Cargo resulted from the failure of the lashings intended to secure the Cargo in its containers, not from the failure to secure the containers to the Vessel.

23. The improper stuffing of the flatrack containers containing the Cargo resulted in extensive damage to several containers, the contents thereof, and the Vessel, as well as the Cargo.

## COUNT I: BREACH OF CONTRACT

24. Paragraphs 1 through 24 are hereby incorporated by reference as if set forth fully herein.

25. Defendant breached the Hamburg Sud/UTi Agreement by failing to provide suitably stuffed containers for shipment of Cargo.

26. As a result of Defendant's acts or omissions, Plaintiff incurred damages in an amount excess of US $350,000 representing damage to the containers on the Vessel at the time of the incident, damage to the contents thereof, shipyard expenses, lost profits, costs of surveyors, and other associated costs.

27. In addition, as a result of Defendant's acts or omissions, Plaintiff incurred damages in an amount excess of US $450,000 in the form of the claims made by Owner of the Vessel against Plaintiff for the value of the damage to the Vessel and repairs and other associated costs.

## COUNT II: BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE

28. Paragraphs 1 through 28 are hereby incorporated by reference as if set forth fully herein.

29. Defendant failed to ensure that the Cargo was secured to its containers in a workmanlike manner, thereby resulting in extensive damage to damage to the Vessel, the containers on the Vessel, and the contents thereof.

30. As a result of Defendant's acts or omissions, Plaintiff incurred damages in an amount excess of US $350,000 representing damage to the containers on the Vessel at the time of the incident, damage to the contents thereof, shipyard expenses, lost profits, costs of surveyors, and other associated costs.

31.     In addition, as a result of Defendant's acts or omissions, Plaintiff incurred damages in an amount excess of US $450,000 in the form of the claims made by Owner of the Vessel against Plaintiff for the value of the damage to the Vessel and repairs and other associated costs.

## COUNT III: INDEMNIFICATION

32.     Paragraphs 1 through 32 are hereby incorporated by reference as if set forth fully herein.

33.     By contract and statute, Defendant owed Plaintiff the duty of indemnification for any liability plaintiff incurs as a result of Defendant's acts or omissions.

34.     As a result of Defendant's acts or omissions, Plaintiff incurred damages in an amount excess of US $450,000 in the form of the claims made by Owner of the Vessel against Plaintiff for the value of the damage to the Vessel and repairs and other associated costs.

35.     Also as a result of Defendant's acts or omissions, Plaintiff incurred liability in excess of US $ 59,000 to the other shippers whose containers and/or cargo were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in favor of Plaintiff and against Defendant as follows:

1.      Awarding Plaintiff money damages as well as prejudgment interest and costs for all damages arising out of Defendant's breach of the Hamburg Sud/UTi Agreement;

2.      Awarding Plaintiff money damages as well as prejudgment interest and costs for all damages arising out of Defendant's breach of the implied warranty of workmanlike service.

3. Awarding Plaintiff indemnification as well as prejudgment interest and costs for all Plaintiff's liability arising out of Defendant's acts and omissions.

4. For all other and further relief to which Plaintiffs may be entitled in law or equity.

Dated: October 19, 2010

                                                Respectfully submitted,

/s/ *Fournaris*
JOSEPH G. GRASSO
CONSTANTINE T. FOURNARIS
Wiggin and Dana LLP
Two Liberty Place
50 South 16th Street, Suite 2925
Philadelphia, PA 19102
Telephone: (215) 988-8312
Fax: (215) 988-8344
E-Mail: jgrasso@wiggin.com
        cfournaris@wiggin.com
Attorneys for HAMBURG SÜDAMERIKANISCHE DAMPFSCHIFFFAHRTS-GESELLSCHAFT KG